UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| C-TECH OF NEW HAVEN, INC., : <br> BRYAN CLAYBOURNE AND DALE : <br> BETHUNE, : <br>     Plaintiffs, : <br> : <br> v. : <br> : <br> UNIVERSITY OF CONNECTICUT : <br> HEALTH CENTER, WILLIAM : <br> HENGSTENBERG AND DIANE : <br> NEDJOIKA, : <br>     Defendants. : | CIVIL ACTION NO. <br> 3:15-cv-1058 (VLB) <br><br> June 29, 2016 |

**MEMORANDUM OF DECISION GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS [Dkt. #21] AND DISMISSING PLAINTIFFS' STATE LAW CLAIMS WITHOUT PREJUDICE**

Plaintiffs C-Tech of New Haven, Inc. ("C-Tech"), Bryan Claybourne ("Claybourne"), and Dale Bethune ("Bethune") bring two federal discrimination claims, pursuant to 42 U.S.C. §§ 1981 and 1983, and state law claims for breach of contract, false light defamation, and intentional infliction of emotional distress against Defendants University of Connecticut Health Center ("UConn Health"), William Hengstenberg ("Hengstenberg"), and Diane Nedjoika ("Nedjoika"). For the reasons that follow, the Defendants' Motion to Dismiss is GRANTED as to Count II of the Amended Complaint, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.[1]

---

[1] After the Court pointed out the patent frivolity of the Plaintiffs' § 1981 claim against Defendant UConn Health, a Connecticut state entity, the Plaintiffs withdrew this claim. *See* [Dkt. # 29; Dkt. #30 at 1]. Thus, the sole remaining federal claim in this case is Plaintiffs' § 1983 claim against the individual defendants.

1

I.      <u>Background</u>[2]

Plaintiff C-Tech is a copier hardware and service provider.  [Dkt. #27, Am. Compl., Count I at ¶ 3].  Plaintiffs Claybourne and Bethune are its principal owners.  [*Id.*].  Claybourne and Bethune are African-American males.  [*Id.*].  On September 1, 2009, Plaintiffs entered into a five-year contract with Defendant UConn Health.  [*Id.* at ¶ 7].  In providing services under the contract, Plaintiffs worked with Defendant Hengstenberg, a white male, who was a supervisor of printing at UConn Health, and Defendant Nedjoika, a white female, who served as UConn Health's manager of printing.  [*Id.* at ¶¶ 5-6].

During the life of the contract, Plaintiffs claim that Defendants Hengstenberg and Nedjoika subjected C-Tech and its employees to "hyper-scrutiny" that amounted to disparate treatment relative to other vendors.  [Dkt. #27, Am. Compl., Count II at ¶ 9].  Plaintiffs do not identify any other vendors, offer any facts regarding the unique "hyper-scrutiny" the Defendants allegedly imposed upon them, nor do they plead any facts tending to show that any such

---

[2] Plaintiffs filed their original complaint on July 10, 2015.  *See* [Dkt. #1].  On November 21, 2015, the Defendants moved to dismiss the Complaint.  *See* [Dkt. #21].  On November 30, 2015, Plaintiffs filed an amended complaint, which differs from the original Complaint in just two ways.  *See* [Dkt. #27].  First, in Count I, the Amended Complaint replaced an equal protection claim with a § 1981 claim against Defendant UConn Health.  *See* [Dkt. #1, Compl. at 1; Dkt. #27, Am. Compl. at 1].  Second, in Count II, the Amended Complaint identified the Equal Protection Clause as the basis for Plaintiffs' § 1983 claim against the two individual defendants.  *See* [Dkt. #27, Am. Compl., Count II at ¶ 11].  As these amendments did not appear to affect the merits of the Defendants' pending motion to dismiss, the Court issued the Plaintiffs an order to show cause why the Court should not consider the Defendants' motion in connection with the Amended Complaint.  *See* [Dkt. #29].  Thereafter, Plaintiffs filed an opposition to the motion to dismiss.  *See* [Dkt. #30].  Accordingly, in resolving the present motion, the Court assesses the merits of the Amended Complaint.

scrutiny was because of Plaintiffs' race.  Plaintiffs allege solely, without any factual support, that Defendants Hengstenberg and Nedjoika held a "negative perception of plaintiff as a minority-owned business."  [Dkt. #27, Am. Compl., Count I at ¶ 12].

In addition, Plaintiffs assert that Defendants Hengstenberg and Nedjoika claimed that C-Tech was not an adequate vendor because of the amount of time it took its employees to conduct repairs.  [Dkt. #27, Am. Compl., Count II at ¶ 8].  Plaintiffs contend that they completed all necessary repairs in a timely fashion, and in accordance with the specific time provisions contained in the parties' contract.  [*Id.*].  Relatedly, Plaintiffs claim that these defendants falsely informed others at UConn Health that Plaintiffs Claybourne and Bethune were inadequate, incompetent and acted inappropriately with regard to their responsibilities with UConn Health.  [Dkt. #27, Am. Compl., Count IV at ¶ 9].

Plaintiffs maintain that Defendant UConn Health breached the parties' contract in several ways.  First, UConn Health changed the main network server system that supplied C-Tech's equipment without first notifying C-Tech, which caused the equipment to suffer significant malfunctions.  [Dkt. #27, Am. Compl., Count I at ¶ 11].  Second, UConn Health terminated the parties' agreement months before it was permitted to.  [Dkt. #27, Am. Compl., Count III at ¶ 8].  Third, following the termination of the contract, UConn Health required C-Tech to remove all one-hundred-and-fifty machines it had installed throughout UConn Health's facilities within three days.  [Dkt. #27, Am. Compl., Count I at ¶ 9].  Fourth, UConn Health shipped some of C-Tech's equipment to an undisclosed

3

location and retained and used a portion of the equipment, despite the fact that UConn Health had decided to terminate the contract and C-Tech had instructed UConn not to touch or remove any of it.  [Dkt. #27, Am. Compl., Count III at ¶ 11]. Finally, UConn Health denied C-Tech the opportunity to wipe all of its hard drives clean and remove all UConn Health information from them.  [*Id.* at ¶ 14].

II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any

4

documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

III.     Analysis

A.      Count II Fails to State a § 1983 Claim Against Defendants Hengstenberg and Nedjoika Because Plaintiffs Fail to Plead Any Facts Tending to Show Discriminatory Animus

Count II of the Amended Complaint purports to bring an equal protection claim against Defendants Hengstenberg and Nedjoika, pursuant to 42 U.S.C. § 1983.  [Dkt. #27, Am. Compl., Count II at ¶ 11].  To allege a violation of the Equal Protection Clause, "it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).  In addition, "[e]qual protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy.  It is well established that '[p]roof of racially discriminatory intent or purpose is required' to [allege] a violation of the Equal Protection clause." *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (quoting *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 528 U.S. 188, 194, 123 S. Ct. 1389, 155 L. Ed. 2d 349 (2003)).  Thus, "a plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).  "To plead intentional discrimination, a plaintiff must allege that the state expressly classified on the basis of a suspect characteristic, applied a neutral program in an intentionally discriminatory manner, or promulgated a policy that was motivated by discriminatory animus and that had an adverse effect." *Gaddy v. Waterfront Comn'n*, No. 13 Civ. 3322

5

(AT) (HBP), 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (citation and quotation omitted). "A plaintiff's conclusory allegations of disparate treatment and personal opinion that such treatment was motivated by discriminatory intent are insufficient to state a claim for an Equal Protection Clause violation." *Id.* (citation and quotations omitted). Instead, "the plaintiff must allege that the defendant acted 'because of' a protected characteristic (*e.g.*, race or ethnicity), and must plead sufficient factual matter to 'nudge [his] claims of invidious discrimination across the line from conceivable to plausible.'" *Guan N. v. NYC Dep't of Educ.*, No. 11 Civ. 4299 (AJN), 2013 WL 67604, at *17 (S.D.N.Y. Jan. 7, 2013) (quoting *Iqbal*, 556 U.S. at 677, 680)). Moreover, "'[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions has violated the constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). Thus, "'liability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose.'" *Id.* (quoting *Reynolds*, 685 F.3d at 204)).

    Here, the Amended Complaint fails to raise discriminatory conduct taken by Defendants Hengstenberg and Nedjoika *because of* Plaintiffs' race. Plaintiffs claim that these defendants (i) subjected Plaintiffs to unidentified "hyper scrutiny"; (ii) falsely claimed that Plaintiffs were unqualified because they took too long to make repairs; and (iii) made unidentified false statements to other members of UConn Health regarding their adequacy, competency, and conduct with regard to their contractual responsibilities. See [Dkt. #27, Am. Compl., Count

6

II at ¶¶ 8-9, Count IV at ¶ 9].  Taken separately or together, these allegations are insufficient to state an equal protection claim because the Plaintiffs offer no factual nexus between this conduct and their race. They refer to no comparators, nor do they identify any standard which was allegedly applied discriminatorily. Instead of asserting facts in support of their claims, they rely exclusively on their subjective conclusions that these Defendants held a "negative perception of [C-Tech] as a minority-owned business."  [Dkt. #27, Am. Compl., Count I at ¶ 12].

As for the first and third allegations, Plaintiffs simply offer no facts regarding the nature of the alleged "hyper scrutiny" or the content of the allegedly false statements, such that no inference of discriminatory intent may reasonably be drawn.  Indeed, the vague statements Plaintiffs attribute to the Defendants, namely, that Plaintiffs Claybourne and Bethune were "inadequate, incompetent and acting inappropriately with regard to their responsibilities with UConn Health," do not implicate the Plaintiffs' race.  [Dkt. #27, Am. Compl., Count IV at ¶ 9].

Similarly, the mere fact that all repairs were performed within the specific time provisions of the parties' contract does not trigger an inference that the Defendants' complaints regarding Plaintiffs' delays in repairing equipment were motivated by discriminatory animus.  Absent any facts regarding the substance of the Defendants' complaints, the number and nature of the repairs, the efficacy of each repair, and the amount of time permitted under the contract, the allegations simply do not permit for even a minimal inference of discrimination. *See, e.g., Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[B]ald

7

assertions of discrimination . . . unsupported by any comments, actions, or examples . . . from which [one] could infer that the defendants possessed a discriminatory . . . motive are . . . insufficient to survive a motion to dismiss."); *Gaddy*, 2014 WL 4739890, at *5 ("Naked assertions of [] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss."). Indeed, the only facts (as opposed to conclusions) the Plaintiffs offer that are even consistent with a theory of discrimination are that the Plaintiffs and the two individual defendants are of different races. These facts alone are not nearly sufficient to support an inference of discriminatory animus. *See Turner v. N.Y. Univ. Hosps. Ctr.*, 784 F. Supp. 2d 266, 283 (S.D.N.Y. 2011) ("[D]ifferences in . . . race are simply insufficient to themselves demonstrate intentional unlawful discrimination."). As the complaint fails to plead facts plausibly alleging either discriminatory treatment or racial motivation, Count II of the Complaint must be and is hereby DISMISSED.

B.   **The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims**

Having dismissed Plaintiffs' equal protection claim, the Court declines to exercise supplemental jurisdiction over their remaining state law claims, in accordance with "the practice preferred by the appellate courts." *N.K. ex rel. Kelly v. Morrison*, No. 3:11-cv-1977 (CSH), 2014 WL 4388552, at *5 (D. Conn. Sept. 5, 2014) (citing *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994)).[3]

---

[3] While the Court considers and dismisses only Count II of the Amended Complaint on the merits, the absence of any allegations concerning the content of any of the defamatory statements allegedly made by the individual

8

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED in part, and Plaintiffs' remaining state law claims are DISMISSED WITHOUT PREJUDICE to refiling in state court.  The Clerk is directed to close this file.

IT IS SO ORDERED, ADJUDGED AND DECREED, this 29th day of June 2016, Hartford, Connecticut

/s/
Vanessa L. Bryant,
United States District Judge

---

defendants and any facts tending to show an intent to harm seriously call into question the merit of Plaintiffs' state law false light and intentional infliction of emotional distress claims.  See [Dkt. #27, Am. Compl. at 6-9].